**Leo S. PINK, et al., Respondents,**

v.

**Timothy KNOCHE, Defendant,**

**American Family Mutual Insurance Company, Appellant.**

**No. WD 60788.**

Missouri Court of Appeals,
Western District.

Feb. 18, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 1, 2003.

Application for Transfer Denied
May 27, 2003.

Rhonda S. Loeppke, Independence, MO, Susan Ford Robertson, Columbia, MO, for Appellant.

William H. Pickett, Kansas City, MO, for Respondents.

Before LOWENSTEIN, P.J., SMART and NEWTON, JJ.

HAROLD L. LOWENSTEIN, Judge.

Appellant, American Family Mutual Insurance Company (American Family), appeals from a judgment following a jury verdict in the amount of $525,000 on a breach of contract claim filed by respondents, Leo and Nora Pink, under the uninsured motorist provisions of three American Family automobile policies they hold. This court finds that the trial court erred by preempting a fact question for the jury by declaring, via a ruling on an *in limine* motion and a subsequent ruling on an offer of proof at trial that, as a matter of law, a reservation of rights letter of the tortfeasor's liability carrier amounted to a denial of coverage. The sole viable issue here was whether or not the tortfeasor was insured. In this case where the suit was against the insurer, with submission to the jury under MAI 31.11 (set out on page 224 *infra*), the ruling caused the only issue to be being submitted to the jury to be the amount of damage.

## Factual and Procedural History

On the morning of January 31, 1998, Timothy Knoche was driving a vehicle that rear-ended with a vehicle driven by Leo Pink, resulting in very serious injuries to Pink. In March of 1998, Mr. Pink and his wife, Nora Pink, filed this lawsuit claiming personal injury and loss of consortium against Knoche. Knoche did not file a responsive pleading; Instead he wrote a letter informing the court he was incarcerated and asked for a year postponement of the court date. In May of 1999, the Pinks filed a first amended petition, which claimed that Knoche was uninsured and added American Family, the Pinks insurance carrier, as a defendant on a contract action.[1] The petition alleged that the vehicle driven by Knoche was not owned by him, that the owner reported the vehicle stolen, and that the insurance carrier for the vehicle denied coverage. The vehicle driven by Knoche was owned by Raoul Lindo. Lindo had a liability policy with Allstate Insurance Company (Allstate). The Pinks filed a claim against Allstate, which was denied on the basis of non-permissive use.[2] The first amended

---

1. The right of an injured party to recover from an uninsured motorist carrier is on the contract rather than in tort. *Berry v. Am. Family Mut. Ins. Co.*, 995 S.W.2d 16, 18 (Mo. App.1999) (citing *Cobb v. State Sec. Ins. Co.*, 576 S.W.2d 726, 736 (Mo. banc 1979)).

2. Knoche testified during a deposition that he drove the Lindo vehicle at the request of

petition again alleged that Knoche himself had no insurance.

A second and third amended petition were filed as the Pinks added claims on other American Family policies they held. The counts in the third (and final) amended petition included: I. Negligent operation of a motor vehicle; II. Loss of consortium; III. American Family insurance coverage; and IV. and V., concerning stacking of their American Family policies. Ultimately, the Pinks sought coverage under three stacked policies on their three cars.[3]

In June of 2000, the Pinks voluntarily dismissed their claims against Knoche without prejudice for Counts I and II, leaving their carrier, American Family, as the only defendant. American Family filed a motion for summary judgment arguing that its policies provide that, as a condition precedent to maintaining a suit to determine liability or damages, the suit must include the operator of the vehicle, as a defendant. American Family also filed a

motion for leave to amend its answer to the third amended petition to include as an affirmative defense the alleged failure of the Pinks to comply with the policy's condition precedent because of their dismissal of Knoche from the suit. The trial court denied the motion for leave to amend and also denied American Family's motion for summary judgment relating to the issue of conditions precedent. The condition precedent issue is not before the court.

Meanwhile, during cross-examination of Knoche during his deposition, it was revealed that at the time of the accident Knoche owned a truck which had liability coverage with Farmer's Insurance (Farmers).[4]

Farmers was subsequently notified of the accident, lawsuit, and trial date (then a month away). Farmers issued a reservation of rights letter to Knoche reserving its right to assert the policy defenses of late notice, non-permissive use, and any other grounds revealed through an investigation.[5]

---

Brenda Heuner who had possession of the vehicle and its keys. Knoche testified that Heuner asked him to run an errand for her in the Lindo vehicle. Heuner testified in her deposition that although she did ask Knoche to run an errand for her, she did not tell Knoche that Lindo told her not to let anyone else drive his vehicle.

3. One policy had coverage of $10,000 for medical expenses and $250,000 for uninsured motorist/vehicle; the second policy had $250,000 in uninsured motorist/vehicle coverage; and the third policy had $25,000 uninsured motorist/vehicle coverage.

4. Knoche testified that he purchased the vehicle in November or December of 1997 and bought insurance for the vehicle. A friend of Knoche wrecked the vehicle after Knoche bought it but prior to the accident in this case. At the time of this accident, Knoche's vehicle was in an impound yard.

5. "We hereby acknowledge your report to us of the incident of January 31, 1998, involving

you and Leo S. Pink. A claim for damages has been filed against you as a result of this incident. As we understand it, this claim arises out of a motor vehicle accident you and Leo S. Pink were involved in. As a result of this claim Leo S. Pink is seeking damages against you in an unspecified amount.

*Your policy of insurance may not afford coverage for this incident, or for any claims for damage arising out of it, and we specifically reserve the right to decline coverage both for a defense and indemnity for the following reasons: ....*

WHAT TO DO IN CASE OF AN ACCIDENT
*Notice*
In the event of an accident, or loss, notice must be given to us promptly. The notice must give the time, place and circumstances of the accident, or loss, including the names and addresses of injured persons and witnesses.
*Other Duties*
A person claiming any coverage of this policy except under Part II must also:

Approximately a week prior to trial, the Pinks filed a motion *in limine* requesting the trial court prohibit American Family from mentioning to the jury any insurance policy in which Knoche was the named insured and which might provide liability coverage for Knoche. Additional facts on the Farmers' ruling appears in the opinion portion of this opinion.

During a pre-trial conference regarding the motion *in limine* concerning the mention of other insurance policies, the trial judge ruled that the Farmer's reservation of rights letter constituted a denial of coverage as a matter of law, and, as such, Knoche was operating an uninsured vehicle according to the definition of uninsured motorist/vehicle in the American Family policies. Thus, the only issue at trial was the amount of plaintiffs' damages.[6]

During the trial, an offer of proof was made on the pivotal issue of admission of evidence relating to the Farmers policy. The trial court ruled that as a matter of law the reservation of rights letter was a denial of coverage and rendered Knoche/ the vehicle uninsured as a matter of law. No evidence was presented on whether or not the other driver had insurance or, if so, whether coverage had been denied.

The verdict director for an uninsured motorist suit is MAI 31.11, which sets out the following elements for the jury:

Your verdict must be for plaintiff if you believe:

First, (name of operator of uninsured motor vehicle) was the operator of an uninsured motor vehicle, and

Second, (name of operator) violated the traffic signal, and

Third, (name of operator) was thereby negligent, and

Fourth, as a direct result of such negligence plaintiff sustained damage.

Additionally, the Notes on Use state that the appropriate definition of uninsured motor vehicle from 12.01 must be given. Here, the appropriate section of 12.01 would have been II, which reads, "The phrase 'uninsured motor vehicle' as used in these instructions means a motor vehicle with respect to which a company writing insurance on said vehicle has denied coverage."

The trial court entered a judgment in accordance with the jury verdict of $525,000 in favor of the Pinks. American Family appealed; however, the appeal was dismissed for failure to dispose of Counts IV and V of the Pinks' petition, which

---

1. Cooperate with us and assist us in any matter concerning a claim or suit.
2. Send us promptly any legal papers received relating to any claim or suit. . . .
3. Submit to examination under oath upon our request.

Your insured car, as used in this part, shall also include any other private passenger car. . . . But no vehicle shall be considered as your insured car unless there is sufficient reason to believe that the use is with permission of the owner . . .

We will investigate this accident to determine all of the facts of the incident, and to obtain information on any claims which have arisen or may arise therefrom. The Mid–Century Insurance Company, does so with a full reservation of its rights under the law and under the insurance policy. Our right to deny cov-erage, both for defense and indemnity, for the above incident is not limited to the reasons set forth above, and shall include any and all additional grounds for non-coverage, or policy breach, that may be revealed through and by our investigation.

By its investigation, negotiation for settlement, settlement, or undertaking the defense of any legal action which may result from this incident Mid–Century Insurance Company, does not waive its right to deny coverage, both for defense and indemnity, of the claims arising from this incident." (Emphasis added).

6. American Family stipulated that the negligence of Knoche caused the accident.

alleged that the American Family policies stacked. The court entered an amended judgment finding in favor of the Pinks on the stacking issue, which is not at issue here.

## I.

American Family's second and third points will be combined and taken first. American Family argues that (1) the trial court erred in sustaining the Pinks' motion *in limine* to exclude from evidence the existence of Knoche's liability policy with Farmers because the subject matter of the motion was not proper for a motion *in limine;* and (2) the trial court erred in ruling as a matter of law that the vehicle driven by Knoche was uninsured because there existed a genuine factual dispute in that the evidence showed the vehicle was insured by both Allstate and Farmers and that Farmers had not denied coverage via its reservation of rights letter.

This court will affirm the judgment of the trial court unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

The American Family policies contained the following provisions concerning uninsured motorist/vehicle coverage:

You have this coverage if Uninsured Motorist coverage is shown in the declarations.

We will pay compensatory damages for bodily injury, which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle. The bodily injury must be sustained by an insured person and must be caused by accident and arise out of the use of the uninsured motor vehicle.

We, and the insured person, will agree on whether the insured person is legally entitled to recover damages and the amount of damages.

If any suit is brought by you to determine liability or damages, the owner or operator of the uninsured vehicle must be made a defendant and you must notify us of the suit. Without our written consent we are not bound by any resulting judgment. . . .

3. Uninsured motor vehicle means a motor vehicle which is:

a. Not insured by a bodily injury liability bond or at the time of the accident.

*       *       *

d. *Insured by a bodily injury liability bond or policy at the time of the accident but the company denies coverage* or is or becomes insolvent within two years from the date of the accident. (Emphasis added).

There were two possible applicable liability policies that would take this case out of American Family's definition of an uninsured motor vehicle. First, Lindo, the owner of the vehicle Knoche was driving, had an Allstate liability policy. The Pinks made a claim against the Allstate policy and received a letter from Allstate denying coverage on the basis of non-permissive use. Second, it was discovered during a deposition of Knoche that he had a Farmers liability policy on a truck at the time of the accident. Farmers was notified of the accident and pending lawsuit. Farmers subsequently issued a reservation of rights letter to Knoche, which is set out in footnote five.

As stated earlier, the Pinks submitted a motion in limine requesting the trial court to exclude from evidence the existence of any insurance policy in which Knoche was the named insured and which might provide liability coverage for the accident.

The Pinks argued that the reservation of rights letter issued by Farmers amounted to a denial of coverage. American Family argued that Farmer's reservation of rights letter did not deny coverage, rather it said that there may not be coverage and reserved its rights. In ruling on the motion *in limine* and then during trial, after the appellant's offer of proof, the trial court found that the reservation of rights letter was sufficient to make the vehicle driven by Knoche uninsured as a matter of law.

American Family made an offer of proof with regard to the Farmers policy. It offered the deposition of Dale Wright, Farmers' claims manager, which was taken on June 28, 2000. (Wright's deposition was not allowed as evidence since it pertained to the Farmer's policy.) (Pre-trial proceedings had begun on June 19, 2000, and opening statements were heard on June 20, 2000.) He testified that there was a policy in effect for Knoche from December 3, 1997, through June 3, 1998, which would include the day of the accident. Wright testified that Knoche was also insured for driving other vehicles if he had sufficient reason to believe the use was with permission of the owner. Thus, both Knoche and any vehicle he drove with permission would be insured. Wright read the depositions of Knoche, Lindo, and Heuner (see footnote three) prior to issuing a reservation of rights letter. At the time the reservation of rights letter was issued, Knoche was still a defendant in the Pinks' lawsuit. In conjunction with the reservation of rights letter, Farmers was providing Knoche with a defense in the lawsuit through the law firm of Herron & Lewis. Wright testified, over objection, that the reservation of rights letter did not specifically deny coverage to Knoche for the accident and that it was not his inten-

tion to specifically deny coverage by issuing the letter. After Knoche was dismissed from the lawsuit, Wright wrote a letter to the attorney assigned to Knoche's case, Lance LeFevre. The letter stated that Mid–Century, Inc.[7] (Farmers) intended to extend coverage to indemnify Knoche for damages as a result of the accident. Wright qualified the statement by testifying that Farmers was extending coverage according to the terms and conditions of the reservation of rights letter.

Wright also testified that it was his opinion that Knoche had sufficient reason to believe that he had permission to drive Lindo's vehicle. Wright further testified that he expected Farmers to make an offer to the Pinks at some point in time. Wright claimed that an offer would be extended after Farmers had sufficient time to evaluate the medical records of Mr. Pink.

Wright's testimony, however, changed when Pinks' counsel cross-examined him. Wright acknowledged that one of the insured's duties under the policy is to notify Farmers of an accident and that is one of the issues raised in the reservation of rights letter. Wright testified that he never received any notice from Knoche about the accident and that, in fact, the first notice he received was in May of 2000, some two years and four months after the incident. Wright also testified that Farmers was not sent a copy of the pleadings served upon Knoche, which was also an issue raised in the reservation of rights letter. The trial court ruled that indecision by Farmers amounted to a denial.

■ "The plaintiff in an action under the uninsured motor vehicle clause has the burden to show that the other driver was operating an uninsured motor vehicle at

---

7. Farmers is a corporate logo named Farmers. Mid–Century Insurance Co. is the correct entity that provided insurance policies to its subscribers.

the time of the occurrence." *Stuart v. State Farm Mut. Auto. Ins. Co.,* 699 S.W.2d 450, 454 (Mo.App.1985) (citing *Oates v. Safeco Ins. Co.,* 583 S.W.2d 713, 715 (Mo. banc 1979)). In this case, under the verdict director, the Pinks were required to prove that Farmers, Knoche's insurer, denied liability. The trial court, however, preempted the Pink's burden of proof by finding that Farmer's reservation of rights letter amounted to a denial as a matter of law. As such, the jury never heard evidence on one of the elements of plaintiff's case, since the court had in essence directed a verdict on this issue. This ruling constitutes a misapplication of law and mandates a reversal.

■ Missouri cases are clear that the uninsured status of the tortfeasor is a jury issue. *See Woosley v. State Auto. Mut. Ins. Co.,* 600 S.W.2d 210, 213–14 (Mo.App. 1980) (whether automobile accident was unavoidable and whether other driver was an uninsured motorist were questions for the jury in insured's action against insurer under the uninsured motorist provision of his policy); *Hill v. Seaboard Fire & Marine Ins. Co.,* 374 S.W.2d 606, 609 (Mo. App.1963) (evidence on the question of the uninsured status of the other motorist consisted of testimony by the defendant's claim adjuster and was found to be sufficient for the jury to find that the other motorist was uninsured).

■ In this case, whether Farmers denied liability, making Knoche uninsured, was a question of fact for the jury. The jury was entitled to hear the equivocal testimony by Farmers' claim manager, Dale Wright, as well as any other pertinent evidence to decide whether Farmers denied liability. In fact, the possible reasons Farmers listed in the reservation of rights letter to deny liability included non-permissive use and failure to notify. Permissive use of a vehicle under an omnibus clause of an automobile insurance policy is a question of fact, *Shelter Mut. Ins. Co. v. See,* 46 S.W.3d 65, 67 (Mo.App.2001), as is whether an insurer is prejudiced by an insured's late notice. *Welch v. Auto. Club Inter–Ins. Exch.,* 948 S.W.2d 718, 721 (Mo. App.1997) (citing *Tresner v. State Farm Ins. Co.,* 913 S.W.2d 7, 15 (Mo. banc 1995)).

This court also notes that *Rister v. State Farm Mutual Auto. Insurance Co.,* 668 S.W.2d 132 (Mo.App.1984), is not dispositive of this matter. In *Rister,* the liability insurer's position was that the liability coverage of the policy was not applicable because of the "fellow employee" exclusion of its coverage. *Id.* at 134. Nonetheless, the liability insurer provided a defense to the defendant ad litem under a "reservation of rights." *Id.* Prior to the jury being impaneled, the liability insurer told the court that it was willing to settle and pay two times the uninsured motorist coverage for an indemnifying release. *Id.* Near the end of testimony in the case, an offer was made by the liability insurer and accepted by the plaintiff. *Id.* The case was then submitted to the jury against the plaintiff's insurer under the uninsured vehicle provisions of their policy. *Id.* The court in *Rister* held that "[a] legal right to recover under the uninsured motor vehicle insurance and a legal right to recover against the liability carrier cannot coexist. They are mutually exclusive." *Id.* at 137. The court explained that when a liability insurer offers a settlement after an initial denial of coverage, it may be said that the liability insurer has only conditionally withdrawn its denial. *Id.* at 136. When a settlement is offered and accepted, however, the liability insurer no longer denies coverage. *Id.* The case at bar is different in that Farmers has not even initially denied, or for that matter, disclaimed coverage.

■ An insurer's reservation of right to contest coverage does not automatically

constitute a denial of coverage. *See Cay Divers, Inc. v. Raven*, 812 F.2d 866, 871 (3rd Cir.1987) (an insured sought to preclude an insurer from asserting a breach by the insured as a bar to the insurer's duty to indemnify by claiming that a reservation of right to contest coverage constituted a denial of coverage); 14 Lee R. Russ and Thomas F. Segalla, COUCH ON INSURANCE 3d § 202:38 (1999). "Under Missouri law, an insurer may choose to undertake the defense of its insured and reserve its right to *later* disclaim coverage, provided it gives the insured notice of a reservation of rights." *Safeco Ins. Co. of America v. Rogers*, 968 S.W.2d 256, 258 (Mo.App.1998) (Emphasis added). A reservation of rights letter is a unilateral declaration from an insurance company to its insured that the company accepts the defense of the tendered claim but reserves its right to *later* deny coverage on certain specified grounds. 7C APPLEMAN, INSURANCE LAW AND PRACTICE § 4686 (Walter F. Berdal, ed. 1979). As such, this court holds that a reservation of rights does not constitute a denial of coverage as a matter of law.

## Conclusion

The judgment is reversed and the cause is remanded for a new trial consistent with this opinion.

All concur.